## Case No. 9,294.

### MATTINGLY v. THREE HUNDRED AND FIFTY-SEVEN BALES OF COTTON.

[2 Flip. 288; 8 Cent. Law J. 227; 7 Reporter, 485.] [1]

Circuit Court, W. D. Tennessee. Nov. Term, 1878.

SALVAGE COMPENSATION—RULE ON HIGH SEAS NOT SAME AS ON RIVERS.

1. Where the district court allowed one-third of the value of a cargo for salvage services which did not consume more than, or a little more than, half an hour's time of a tug, it was set aside on appeal on the ground of its being exorbitant and excessive; the amount of $750 being deemed reasonable, which sum was adjudged to the salvors.

2. Salvage compensation in cases arising on the high seas cannot be safely followed in cases arising on the western rivers, as the peril of life is generally much less.

[Appeal from the district court of the United States for the western district of Tennessee.]

[The material facts are as follows: The steamboat Mary Bell, a large vessel, was discovered to be on fire about two o'clock p. m. of the 27th day of February, 1876, while she was lying at the levee of the port of Vicksburg, Mississippi. She was taking on a cargo of cotton, her head being to the shore and her stern extending out into the Mississippi river at an angle of about forty-five degrees. On her larboard side, and to some extent caught under her guards, was the small steamboat Yazoo Belle, partially laden with cotton; and on her starboard side and next to the levee, but having sufficient room to be turned around, was the small steamboat Tallahatchie, likewise partially laden with cotton, which last named cotton was that involved in this litigation. The flames on the Mary Bell spread quite rapidly, and in this condition of affairs, and in response to the whistle of the Mary Bell for assistance, the steam-tug John Bigley, which was then some half mile distant, steamed to the place of disaster, with the crew at the time on board, to render such assistance as might be needed. The tug first made fast to the Yazoo Belle, she being in more immediate danger from the fact that the wind blowing off shore carried the flames in her direction, and towed her out of reach of the peril. The tug then returned as soon as possible, and having made fast to the Tallahatchie, likewise towed her to a safe place, first below, and afterwards above, the burning steamboat. This tug was

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 7 Reporter, 485, contains only a partial report.]

the only steamer in port that could have rendered such assistance at the time; and the strong probabilities were that the Tallahatchie, as well as the Yazoo Belle, with their remaining cargoes, would have been destroyed, but for this service. Other parties were attempting to move the Tallahatchie to another position, and had moved her slightly, but with no great prospect of ultimate success. The time actually consumed in towing the Tallahatchie away from the fire was from five to ten minutes; and together with the time consumed in removing her to a position above the burning steamboat, aggregated about a half hour. While aid was being rendered to the Yazoo Belle, the orginal crew of the tug was joined by two others of the crew, who were off watch at the time, also by one of the owners, and by one or more persons belonging to the crews of the Yazoo Belle and Tallahatchie, and they all equally participated in the remaining service, the crew of the tug, all the time during its rendition, not being required to leave their vessel. The owners of the tug and her regular crew are the libelants in this suit, and seek a salvage compensation. Some of the libelants' witnesses testified that the tug, in rendering this assistance to the Tallahatchie and cargo, was exposed to danger, because of the proximity of the burning steamboat; and that the lives of those on board of the tug were likewise imperilled by the heat, by danger from exploding steampipes, and by risks from the probable falling of the chimneys, and also of the side-houses of the Mary Bell, which in fact fell soon after the Tallahatchie was towed away; but they consider that the tug might, at any moment, have quickly steamed away from the place of disaster.

[The cotton on board the Tallahatchie, which had come out of the Yazoo river, was consigned in part to Memphis, Tennessee, and in part to New Orleans, Louisiana. That consigned to Memphis was, after the fire, reshipped at Vicksburg for Memphis on the steamboat Capitol City, without objection by the salvors; but upon its arrival at Memphis, it was arrested in this cause, and was soon afterwards released on bond, it having been claimed by the Hernando Insurance Company and Planters' Insurance Company, both of Memphis, Tennessee, with small lots by other persons. The libelants dismissed their suit as to one hundred and nineteen bales of cotton, which was shown by claimants' proof not to have been on board the Tallahatchie at the time of the service; and this left two hundred and twenty-three bales to be adjudicated upon, out of the three hundred and forty-two bales actually seized under the warrant of arrest.

[Upon the hearing of the cause in the district court the libelants were awarded salvage at the rate of ten and seventy-nine one hundredths dollars per bale, the agreed value of the cotton being thirty-two and fifty one hundredths dollars per bale, which allowance, with interest on the amount, made the decree of the district court two thousand six hundred and eighty-six and eighty-five one hundredths dollars, against such of the cotton as was held liable. The cotton so held liable was the portion of the original cargo, which had been claimed and bonded by the Hernando Ins. Co. and the Planters' Ins. Co., by reason of the insurance risks they had therein; and therefore a personal decree was rendered against each of the claimants, and their sureties, for their respective proportions of the aggregate salvage awarded, together with the costs taxable, on said two hundred and twenty-three bales of cotton. The decree recites that the allowance made is based upon a like compensation voluntarily paid to libelants by the New Orleans Board of Underwriters, for the rescue of their cotton on board of the Yazoo Belle and Tallahatchie, and saved at the same time with the Memphis cotton. The New Orleans Underwriters paid forty-five hundred dollars for the saving of four hundred and seventeen bales, and did so voluntarily, though under circumstances not necessary to mention.][2]

J. M. Gregory, for libellants.

T. B. Turley and H. C. Warinner, for claimant.

BAXTER, Circuit Judge. The claimants have appealed to this court and here complain of the decree below as awarding an excessive compensation in salvage. I cannot concur with the district court in the amount allowed. Upon the statement of the case as presented by the proctor for libellants, I think the sum of seven hundred and fifty dollars most ample compensation in the way of salvage. Indeed, I think five hundred dollars would be liberal; but I fix it at seven hundred and fifty dollars to cover interest. There is no doubt in my mind but that, if libellants had been called upon to do the work at a stated price, they would have gladly undertaken it for one hundred dollars. Their own proof shows that the ordinary compensation charged by the tug for towage was ten dollars per hour. I cannot consent to adopt the rule, which seems to have grown up among some of the courts, exercising maritime jurisdiction over the western rivers, of allowing such large awards of salvage.

The learned counsel for the libellants insists that upon the principles laid down in the text-books, and under the precedents established, the amount allowed below, being about one-third the value of the cotton, is not excessive. I cannot adopt this view. In former years such services as these, requiring but little time and labor, were rendered by steamboats on the rivers as acts of courtesy to each other, without any demand for

[2 [From 8 Cent. Law J. 227.]

compensation. But beyond this, "in salvage claims arising on the western rivers, the precedents of courts administering the admiralty law of the ocean in regard to the amount of compensation, cannot be safely adopted, because the peril of life is generally much less." McGinnis v. The Pontiac [Case No. 8,801]. This principle I most cordially approve; and while it may be true that in the multiplicity of courts and judges having salvage causes before them, some of them have been disposed to adopt and apply, in large degree, the theory of compensation recognized in ocean salvage; still, for myself, I am wholly unwilling to countenance or continue such extreme liberality in the exercise of my judicial discretion. In this circuit over which I am required to preside, and so long as I occupy my present position, I shall be careful to guard the property of suitors, whether they be insurance companies or general owners, against what seem to me to be excessive or extortionate demands; and in. the expression of the judicial discretion vested in me under the law, I shall make for this circuit such precedents in the matter of salvage allowance as seem to me just and proper according to the circumstances of each case.

There are no facts presented in this record justifying a larger allowance than that I have fixed. The danger of peril to the tug and her crew, alleged in behalf of the salvors, and mentioned in their testimony, was more fanciful than real, and could, at any moment, have been withdrawn from and escaped. The time occupied in the rendition of the service was very short, and these elements, taken in connection with the other circumstances surrounding the transaction, lead me to the conclusion that the allowance of the gross sum of seven hundred and fifty dollars, instead of a pro rata per bale, or on the entire value of the property. saved, is the proper amount to be awarded as salvage in this cause. But I adjudge this amount free of all costs, and direct the whole of the costs in the district court and in this court to be taxed against the claimants.

The decree of the district court is, therefore, reversed and modified as indicated in the opinion, and the decree will be entered accordingly.